Alfred **LEWIS**, Plaintiff-Appellant,
Cross-Appellee,

v.

**TIMCO, INC., et al.,**
Defendants-Appellees,

v.

**JOY MANUFACTURING,**
Defendant-Appellee,
Cross-Appellant.

No. 81–3022.

United States Court of Appeals,
Fifth Circuit.

July 12, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1984.

Patrick A. Juneau, Jr., Lafayette, La., for Home Petroleum.

Robert M. Contois, Jr., Edith Brown Clement, New Orleans, La., for Atwood Oceanic, Inc.

James E. Diaz, Lafayette, La., for Rebel Rentals.

John A. Jeansonne, Jr., Lafayette, La., for Joy Manufacturing.

Vinson & Elkins, Charles T. Newton, Jr., Harold K. Watson, Houston, Tex., for Petroleum Equip. Suppliers Assoc., amicus curiae.

Robert K. Guillory, Cornelius Dupre, II, Eunice, La., for Alfred Lewis.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

This case was returned to the panel by the en banc court, 716 F.2d 1425 (5th Cir. 1983), for our determination whether Alfred Lewis' conduct constituted 50% of the total negligence proximate to his accident. On our initial consideration we did not reach this question, concluding instead that the rule of comparative negligence was not applicable in a strict products liability case by a longshoreman. 697 F.2d 1252 (5th Cir.1983). Sitting en banc this court vacated the panel opinion in part and held "that the trial court was correct in its decision that the maritime principle of comparative fault is applicable in maritime cases that urge strict liability for defects in products." 716 F.2d at 1427.

At the outset, to the extent deemed necessary we reinstate the prior panel opinion except insofar as it may be modified by this opinion or is inconsistent with the teachings of the majority opinion of the en banc court. The pertinent facts are detailed in the panel opinion, 697 F.2d 1253–54. We set forth only a factual summary for purposes of the present opinion, with emphasis on those facts considered critical to the question we address today—to what extent did Lewis' acts or omissions proximately contribute to his accident.

Lewis was part of a crew furnished by his employer, Timco, Inc., to work on the jackup drilling barge VICKSBURG in the coastal waters of Louisiana. Lewis was assigned to operate the hydraulic tongs used in the "make-up" of tubing joints being run into a well with a "fishing tool" to retrieve an obstruction dropped into the drilling hole. Lewis was inexperienced as a tong operator, having regularly worked tongs on only one prior occasion. That earlier assignment totaled approximately 25 hours including travel time to and from the work site. Other than that, his experience was limited to relieving tong operators, for a few minutes at a time, when they ate or went to the restroom. Lewis' education was limited; he left school in the eighth grade because of economic necessity. He previously worked at various jobs which required only manual labor or limited skills.

When Lewis reported to work on the fateful tour of duty a computerized control unit supplied by Rebel Rentals, Inc. to monitor the torque applied to the tubing joints would not work with the original tongs supplied. Rebel Rentals dispatched a set of Hillman-Kelley Model 500 C tubing

tongs manufactured by Joy Manufacturing. These tongs were involved in the accident. At the time of the accident the Timco crew, under the supervision of an employee of Edwards Rental and Fishing Tools, Inc., was setting up to begin the "fishing operation" to retrieve the obstruction.

Hydraulic power tongs are large mechanical wrenches with internal cams that rotate jaws around tubings and casings so that they may be assembled or dismantled. Generally, power tongs have "dead man switches," a safety device which immediately stops the operation of the tongs when the throttle is released. The Hillman-Kelley 500 C tongs did not have this safety feature. Instead, these tongs were designed to free the tubing when the throttle was released. This automatic indexing feature required that two switches be set properly. When these controls were not synchronized, the tongs would not stop upon release of the throttle. The tongs would continue to turn unless restrained by a tight "snubbing line." A snubbing line is a cable which anchors the suspended tongs to the rig platform, stabilizing the tongs. If the snubbing line is not sufficiently taut, it may fail to restrain the tongs and the operator may be caught between the snubbing line and the tubing. That was Lewis' fate. He released the throttle but the tongs did not stop. The tongs continued to turn, and Lewis was crushed between the snubbing line and the tubing and sustained serious and permanently disabling injuries.

The district court found that the "tongs had a design defect in that a control setting could be imposed which would cause them to continue operating even when the throttle was released." These defects "rendered the tongs unnecessarily dangerous to normal use." In addition, the district court found that the representative of Rebel Rentals knew that Lewis was experiencing difficulty because the controls were not coordinated but did not instruct Lewis on the proper manner of operating the tongs. Incredibly, instead of setting the tongs' controls properly, or cautioning Lewis about the dangers of improper settings, the representative gave Lewis a hammer and an oil can and told him to strike the controls to force the release of the tubing. In addition, the trial court found that the representative of Edwards Rental who was in direct supervision of the fishing operation, a man with broad experience in oilfield work, observed Lewis's difficulty in operating the tongs, was aware of the danger posed by the slack in the snubbing line, but said or did nothing to assist or warn the inexperienced Lewis.

The district court found Lewis negligent for "attempting to make up the fishing tool joint without adjusting the length of the snubbing line." The record reflects that Lewis made an effort to reset the snubbing line when the fish tool operator directed that the assembly of the fishing tool and joints be done in the "mouse hole," an opening slightly closer to the anchoring post of the snubbing line than the drilling hole. This repositioning caused slack to develop in the snubbing line. When Lewis got a tool and started to adjust the snubbing line he was told by the Timco driller, his immediate superior, that they were behind on the job and did not have time to adjust and re-adjust the snubbing line. He was told to get on with his work. The message was pungent and clear; Lewis obeyed. Shortly thereafter, when Lewis attempted to disengage the tongs the throttle would not release, the tool continued to turn, and Lewis was crushed against the tubing by the snubbing line.

After a bench trial the district court assigned responsibility for the tragic accident 40% to the manufacturer, Joy Manufacturing, 40% to the power tong owner, Rebel Rentals, and 20% to the fishing operator, Edwards Rental. The court then found that Lewis' failure to tighten the snub line contributed 50% to the accident and reduced his quantum by one-half, resulting in a net recovery of $343,027.22.

*Discussion*

The sole issue on this remand to the panel is whether the trial court clearly erred in determining that Lewis was 50% at

**166**

fault in the accident causing his injuries. In a maritime appeal the appellant has the burden, when challenging a factual finding, to show that the district court was clearly erroneous. *McAllister v. United States,* 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Noritake Co., Inc. v. M/V Hellenic Champion,* 627 F.2d 724 (5th Cir.1980). Questions of negligence in admiralty cases are treated as factual issues, and are thus subject to the clearly erroneous standard. *Valley Towing Service, Inc. v. S/S American Wheat, Freighters, Inc.,* 618 F.2d 341 (5th Cir.1980). After an exhaustive study of the record, including multiple readings of some parts, we are persuaded beyond peradventure that the trial court's finding is clearly erroneous in fact and involves an erroneous application of law.

■ The record supports all factual findings other than the extent of Lewis' negligence.[1] We are not prepared to say that a 40% allocation to Joy Manufacturing for placing an unreasonably dangerous product on the market, a 40% allocation to Rebel Rentals for negligently supplying a product it knew or should have known was unreasonably dangerous and for not preventing its use in a dangerous manner, and a 20% allocation to Edwards Rental for negligent supervision and instructions is clearly erroneous.[2] We accept those findings and assignments.

■ We are persuaded, however, that the evidence simply does not support the conclusion that Lewis' actions equaled the

1. The relevant findings of fact and conclusions of law are:

\* \* \* \* \* \*

13. The accident was caused by the fact that the tongs did not shut off automatically when Lewis released the throttle combined with the fact that the snubbing line had too much slack in it. The tongs failed to disengage because the two separate control devices were not synchronized.

\* \* \* \* \* \*

15. The tongs had a design defect in that a control setting could be imposed which would cause them to continue operating even when the throttle was released. Although the instructional manual for the tongs pointed out the necessity for synchronizing the controls, it gave no warning of the severe hazard created by failing to synchronize, nor was there any such warning on the tool itself. These design deficiencies in the tongs and the instructions accompanying them rendered the tongs defective and unreasonably dangerous to the operator. Additionally, Joy was negligent in furnishing tongs with these defects which it knew or should have known rendered the tongs unnecessarily dangerous to normal use.

16. Timco and many other companies which operated tongs routinely disconnected linkage so that the 500 C tong would disengage even if the controls were not synchronized. The Rebel representative on the rig had knowledge of this practice. This knowledge by the Rebel representatives should have made it obvious to them why Lewis was experiencing difficulty in disengaging the tongs; this knowledge of the operation of the Rebel tong and observation of plaintiff's problem with the tong made it imperative that the Rebel representatives instruct plaintiff on the proper manner of operating the tong. I find that the Rebel representatives observed the

persistent problems Mr. Lewis encountered in disengaging the tongs and were negligent in failing to instruct him as to the proper method of synchronizing the controls.

17. Mr. Larry Franks was the representative of Edwards on the rig and was in direct charge of the fishing operation in which plaintiff was participating at the time of his accident. Mr. Franks had broad experience in oilfield work. While it was plaintiff's primary responsibility as operator of the tong to adjust the snub line, Mr. Franks also should have been aware of the fact that the snub line was too long and I find that Mr. Franks was negligent in failing to advise plaintiff to shorten the snub line.

18. Although the Atwood crew observed plaintiff's difficulty in operating the tongs, they had no peculiar knowledge of the nature of the problem. Considering the obvious nature of the danger inherent in operating the tong with the snub line too long and the fact that the operations were being directly supervised by Mr. Franks, I find no fault on the part of Atwood or its employees under the standard established by 33 U.S.C. § 905(b).

19. The plaintiff failed to establish that the Home representative had knowledge of the difficulty with the operation of the tongs or that the snub line was too long. Accordingly, I find no negligence on the part of Home.

2. These are not, necessarily, the results we would have reached were we the fact-finders, *see e.g. Western Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587 (5th Cir.1980); we say no more than there is evidence to support these findings and we are not left with a definite and firm conviction that a mistake has been committed. *Pullman v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

combined fault of the tong manufacturer, the tong owner and the fishing operation supervisor. In an employment situation, in determining whether a worker acted reasonably in encountering a risk, we examine, *inter alia*, the following criteria:

(1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.

*Martinez v. United States Fidelity and Guaranty Company,* 423 So.2d 1088, 1090 (La.1982).

Lewis, an untutored, poorly experienced, unlettered workman, operated unfamiliar, defective tongs with a slack snubbing line as he was ordered to do by his supervisor. The record firmly establishes Lewis' inexperience. On his second regular assignment as a tong operator he was required to use a set of tongs which the district court found to be "defective and unreasonably dangerous to the operator." He had never operated such tongs before. He did not comprehend why the controls would not work properly. When his superiors and the Rebel Rentals representative observed his problem in getting the tongs to stop and release the tubing their response was to give him an oil can and a hammer to use in forcing the controls. No one properly set the controls. No one told Lewis how to set the automatic indexer. No one warned of the danger. No one tried to help. When Lewis moved to adjust the slack in the snub line caused by the movement over to the mouse hole he was admonished by his supervisor not to delay further their activities by adjusting that line. Lewis, newly promoted to tong operator, was concerned about losing his new job unless he followed his orders. We are in accord with an early expression of the Louisiana Supreme Court in *Lee v. Powell Bros. & Sanders Co.,* 126 La. 51, 52 So. 214, 216 (La.1910), holding that:

the servant is relieved of the imputation of contributory negligence for obeying an order of his master, or of his master's representative, which exposes him to danger, "unless the risk is so great, or the danger so obvious or glaring that no prudent person, in a like situation, would undertake it, even when ordered to do so by his employer." Thompson, Com.Neg. (2d Ed.) § 5379.

Lewis should have removed the slack from the snubbing line. That act, viewed with the unerring visual acuity of 20/20 hindsight, was careless, and it was involved in the occurrence of this sad accident. But what is its legal effect in that rig operation setting? Considering the legal fault of the other parties—the strict liability of the manufacturer of an unreasonably dangerous product, the blatant negligence of the power tong owner, and the negligence of the fishing operation supervisor—Lewis' contribution wanes into insignificance. Under the prevailing circumstances, it cannot be said that Lewis' willingness and efforts to operate unfamiliar tongs without adequate training, briefing or supervision, and his obeisance to an order from his superiors to desist from his efforts to tighten the snub line, were unreasonable acts constituting negligence. We find and hold as a matter of fact and law that Lewis was guilty of no proximate act of negligence. Accordingly, no reduction in quantum is appropriate.

The judgment of the district court is AFFIRMED except insofar as it assesses Lewis with 50% comparative negligence. In that respect the judgment is REVERSED and RENDERED, and the matter is returned to the district court for entry of a judgment consistent herewith.