Norman D. GISH, Plaintiff–Appellant,

v.

CSX TRANSPORTATION, INC. f/k/a Seaboard System Railroad, Inc., Defendant–Appellee.

No. 89–1408.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1989.

Decided Dec. 11, 1989.

Edward F. Brennan, Jr. (argued), Brennan, Cates & Constance, Belleville, Ill., Robert John, Evansville, Ind., for Norman D. Gish, plaintiff-appellant.

F. Wesley Bowers and David E. Gray (argued), Bowers, Harrison, Kent & Miller Evansville, Ind., for CSX Transp., Inc., defendant-appellee.

Before FLAUM, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Plaintiff Norman Gish sued defendant CSX under the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq. (the FELA) for injuries received on the job. The jury found for Gish, but attributed 50% of the negligence to him, thus reducing his award by half. Gish challenges the district court's permitting the jury to consider comparative negligence and its denial of JNOV. We affirm.

## I.

Norman Gish was an experienced pipefitter working for the CSX railroad at its Howell Yard in Evansville, Indiana. As part of his job, Gish was required to clean out a particular sewer line in the railroad yard when it clogged, usually about once a month. The line required frequent cleaning allegedly because it was poorly designed and because improper materials were used when it was constructed. To gain access to the sewer, Gish needed to remove a manhole cover which weighs about 175 pounds. Ordinarily two men work together to lift the manhole cover, although it was not uncommon for one man to do it.

On September 29, 1983, Gish was the only pipefitter on duty. The man who usually worked with him was out with an injury. When ordered to clear the sewer, Gish first used a hose, but that method did not clean the line. To do the job properly he had to open the manhole to gain access to the clogged area. Gish used a prybar to wedge up the edge of the manhole cover and then attempted to lift it the rest of the way by hand. But the cover became wedged in the manhole, so Gish gave it a good "yank." That yank seriously injured Gish's back.

Gish sued the railroad in the district court under the FELA, charging several specific instances of negligence. Among the charges were that the railroad failed to provide adequate help in the performance of his work, failed to provide a reasonably safe workplace, failed to provide adequate equipment, negligently designed and constructed the drainage system, negligently failed to replace the system, and carelessly continued to operate the drainage system after it knew the system required frequent potentially hazardous maintenance.

On one or two prior occasions when he needed help lifting the manhole cover, Gish claims his supervisor, Danny L. Gilmore (since deceased) told him to "do his job or go home." On the day of the injury, rather than ask Gilmore for help, Gish looked around for a tool to help him lift the manhole cover by himself. Ordinarily Gish used a "carhook" (also called a "packing hook") to lift the lid, but carhooks were becoming harder to come by in the yards because changes in the construction of the cars made the hooks obsolete. Carhooks were, however, available at the car shop, about two or three blocks away. According to Gish, however, Gilmore told him just to use the nearby prybar.

The railroad denied all negligence, and argued that Gish's injuries were caused by his own negligence. It also denied that Gilmore had ordered Gish to use the prybar. Gilmore died before he could testify, but the railroad presented two witnesses who testified that Gilmore was not the sort of person who would ever tell an employee to "do his job or go home." It presented a tape recording of Gish's initial interview with the railroad's Claims Representative wherein Gish said nothing about acting at Gilmore's direction. The railroad also provided evidence that Gish could have asked Gilmore to help or to request assistance

from someone else, or he could have walked two or three blocks to obtain a carhook, or he could have used a forklift to remove the manhole cover. Given all the safe alternatives Gish had, the railroad argued, Gish's decision to attempt to lift the manhole cover in the way he did at least contributed to his injury.

Over Gish's objection, the court instructed the jury to reduce Gish's award if it found that his negligence contributed to the injury. The jury returned a verdict finding CSX liable for the injury, and assessed damages of $789,000. The jury then found Gish to have been 50% responsible for his injuries, and accordingly reduced the award to $394,500. Gish moved for judgment notwithstanding the verdict in the amount of $789,000. The motion was denied, and Gish took a timely appeal.

## II.

The controversy here centers on the distinction between an employee's contributory negligence and his assumption of the risks of employment. The FELA has a mandatory rule of comparative negligence, which reduces the plaintiff's recovery by that part of the injury which is attributable to the employee's own negligence. 45 U.S.C. § 53.[1] However, 45 U.S.C. § 54 eliminates an injured employee's alleged assumption of risk as a defense to a claim of injury resulting from the employer's alleged negligence.[2] Gish argues that, as a matter of law, his actions constituted an assumption of the risk rather than contributory negligence, and that the district

court erred by presenting the issue of comparative negligence to the jury.

*Taylor v. Burlington Northern R. Co.,* 787 F.2d 1309 (9th Cir.1986), directly addresses the distinction between contributory negligence and assumption of risk in the context of the FELA. In an opinion by then-Circuit Judge Kennedy, the court stated:

> Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.

*Taylor,* 787 F.2d at 1316 (citations omitted). Judge Kennedy's interpretation makes good sense, as it allows § 53 of the Act (providing for reduction of damages on a showing of comparative negligence) to be reconciled with the Supreme Court's command in *Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54, 64, 63 S.Ct. 444, 449, 87 L.Ed. 610 (1943), that FELA cases "be handled as though no doctrine of assumption of risk had ever existed." The abolition of the defense of assumption of the risk in § 54, however, does not make the comparative negligence provisions of the Act obsolete. Negligence is present when the employee's acts add some additional danger to those dangers presented by the employer's

---

1. 45 U.S.C. § 53—Contributory Negligence provides in part:

 "... the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

2. 45 U.S.C. § 54—Assumption of Risk of Employment, provides:

 "In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

negligence, *Taylor, supra.* "An employee's contributory negligence is no bar to relief; damages are simply reduced in proportion to the amount of negligence attributable to the employee." *Caillouette v. Baltimore & Ohio Chicago Terminal Railroad,* 705 F.2d 243, 246 (7th Cir.1983).

 Although a defendant is entitled to a contributory negligence instruction if there is any evidence to support the theory, to do so he must produce evidence of the plaintiff's lack of due care. *Birchem v. Burlington Northern Railroad Co.,* 812 F.2d 1047 (8th Cir.1987). In *Wise v. Union Pacific Railroad Co.,* 815 F.2d 55 (8th Cir. 1987), the defendant railroad justified its contributory negligence instruction by showing that the plaintiff, who was injured when he tripped over a disconnected switch, did not look where he was stepping, was not wearing proper footwear, and should have seen the switch as others could. Here the jury could reasonably find from the evidence presented that Gish's actions did add additional dangers to an already dangerous situation. Gish used the prybar when he could have used a carhook or a forklift. He tried to dislodge the cover by yanking it himself rather than seeking assistance or further instructions. These actions and omissions were enough to let the jury decide whether he was negligent.

Apparently Gish would have the jury believe that he assumed a risk simply by coming to work each day. Obviously this was not the case. He did present evidence that the drainage system may have been negligently designed and constructed, and perhaps that by not replacing the system the railroad negligently continued an operation it knew required frequent and potentially dangerous maintenance. But that isn't how Gish was injured. He was injured in the process of removing a manhole cover, a task that should have been routine. The jury could have concluded (as it apparently did) that the railroad negligently allowed the defective drainage system to continue without proper repair. But at the same time, the jury, based on the evidence, could have concluded that while the company's negligence required Gish to remove the manhole cover, the alternative method Gish used to remove it was his own negligence. Thus the jury's conclusion that 50% of the damage was caused by Gish's own negligence is not unreasonable given the facts of this case. To allow a jury to consider contributory (comparative) negligence was not error.

Gish relies on *Birchem v. Burlington Northern R. Co., supra,* which involved an employee who was injured while using a defective machine. The court held that, absent some evidence that the employee had failed to use proper care in using the machine, it was proper for the trial court to refuse to give an instruction on contributory negligence. But the jury in this case heard evidence that Gish had failed to use proper care in removing the manhole cover. Because there was evidence to support the contributory negligence theory, the instruction in this case was proper.

Gish also relies on *Dixon v. Penn. Central R.,* 481 F.2d 833 (6th Cir.1973), in which the employee injured his back attempting to throw a defective switch which maintenance employees had just tried to repair. The Dixon court held that, because there had been no suggestion that there was a safer way to test the switch, there was no evidence to support a finding of contributory negligence. Here, CSX presented several safe alternatives for removing the manhole cover that Gish could have used.

Finally, Gish relies on *Lewis v. Timco, Inc.,* 736 F.2d 163 (5th Cir.1984), decided under the Jones Act which contains liability provisions similar to those of the FELA. In *Lewis* a seaman was ordered by his supervisor to leave slack in a line on the hydraulic power tongs machine he was operating, and the slack in the line caused his injury. The court, quoting *Lee v. Powell Bros. & Sanders Co.,* 126 La. 51, 52 So. 214 (1910), held that "the servant is relieved of the imputation of contributory negligence for obeying an order of his master, or of his master's representative, which exposes him to danger, 'unless the risk is so obvious or glaring that no prudent person, in a like situation, would undertake it, even

when ordered to do so by his employer.' Thompson, Com. Neg. (2d Ed.) § 5379." *Lewis,* 736 F.2d at 167. Perhaps if Gish's version of the facts was all that the jury heard, *Lewis* would apply. But in this case there was sufficient evidence for the jury to find that Gish's supervisor had not ordered him to lift the lid using only a prybar, or to yank the wedged lid out of the hole without assistance. Thus the question of whether Gish was also negligent was one for the jury, and giving the instruction was not error.

The district court carefully instructed the jury to avoid considering any dangers that Gish had to face as part of his job, including those dangers Gilmore may have directly ordered him to undertake. One instruction given stated in part: "You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions." This instruction prevented the jury from considering the forbidden defense of assumption of the risk while allowing it to make factual findings on the issue of comparative negligence.

After the jury returned its verdict, Gish filed a motion for judgment notwithstanding the verdict, asking that the reduction of the total damages for Gish's contributory negligence be eliminated. Gish's argument was the same as that raised in this court, i.e., that it was improper to instruct the jury on comparative negligence. The trial judge denied the motion, holding that the jury could reasonably find that Gish had added "new dangers to the existing situation," citing *Taylor.*

A motion for judgment notwithstanding the verdict under Fed.R.Civ.P. 50 is granted only if all the evidence viewed in light most favorable to the nonmoving party is insufficient to support the verdict. *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985). There was evidence that Gish could have walked the two or three blocks to the car shop to get a carhook which would have allowed him to remove the lid safely, or that he could have used a forklift to do the job, or that he could have asked for assistance from his supervisor. The jury was not required to believe that the supervisor ordered Gish to use the prybar and remove the wedged lid by himself. Viewed in the light most favorable to the nonmoving party, the evidence that Gish acted negligently was sufficient to support the verdict. The judgment of the district court denying Gish's motion for judgment notwithstanding the verdict is therefore

AFFIRMED.