(263 P.3d 208)
No. 104,553

Luis Vallejo, *Appellee,* v. BNSF Railway Company, *Appellant.*

Opinion filed September 16, 2011.

*William P. Coates, Jr.,* and *David M. Druten,* of Coates & Logan, LLC, of Overland Park, and *Alice E. Loughran,* of Washington D.C., for appellant.

*Daniel J. Cohen,* of Law Offices of Daniel J. Cohen, of St. Louis, Missouri, and *Davy C. Walker,* of Law Offices of Davy C. Walker, of Kansas City, for appellee.

Before HILL, P.J., GREEN and BRUNS, JJ.

GREEN, J.: Burlington Northern Santa Fe Railway Company (BNSF) challenges a jury verdict in favor of Luis Vallejo, who injured his back while working for BNSF. On appeal, Vallejo contends that this court does not have jurisdiction to hear this case. We disagree. In challenging the jury verdict, BNSF alleges that the trial court erred in failing to give a jury instruction on contributory negligence. We agree. Accordingly, we reverse and remand for a new trial. BNSF also argues that the trial court erred in giving a jury instruction on future damages. Because we have reversed the jury's verdict and remanded for a new trial on the contributory negligence instruction issue, we need not address the future damages issue.

Luis Vallejo works as a carman for BNSF. Vallejo works at the Murray Yard, but often works overtime at other locations. On August 4, 2006, Vallejo worked overtime at the Argentine Yard. Vallejo's assignment was to fabricate a sill step. Vallejo had fabricated a sill step many times before.

At the Argentine Yard, Vallejo did not have the proper tools in his truck so he went to the material department to find more tools. The material man was not in the material department so Vallejo took what tools he could find and went back to the job site. Vallejo knew he did not have adequate tools for the job, but he completed the job with the tools he had.

Vallejo did not feel any pain when he was welding the metal for the sill step. Because Vallejo did not have adequate tools, Vallejo had to exert more force than normal to bend the metal. It was not until Vallejo knelt down to pick up some pieces of metal that he felt the sharp pain in his back. Vallejo waited a few hours before reporting the injury to his supervisor. In his injury report, Vallejo did not report any problems with the tools or equipment. In fact, Vallejo left the tools in his truck for the next carman to use. Vallejo returned to work the day after his injury but only performed light duties.

After being injured, Vallejo went to see BNSF's doctor. That doctor referred him to Dr. Ebelke, a neurosurgeon, who diagnosed Vallejo with a herniated disc. After conservative treatment failed, Dr. Ebelke performed surgery on January 11, 2007. Vallejo recovered from the surgery and returned to work.

When Vallejo's back and leg pain returned, Vallejo then saw Dr. Amundson, an orthopedic surgeon. Dr. Amundson told Vallejo that he had suffered a recurrent herniation and again performed surgery after conservative treatments failed. The second surgery was performed on March 30, 2009. After recovering a second time, Vallejo returned to work.

On August 28, 2008, almost 2 years after the injury occurred, Vallejo filed a Federal Employers' Liability Act (FELA) action against BNSF. In his petition, Vallejo contends that the equipment caused his injury and that BNSF was negligent for failing to provide proper equipment.

Before trial, the trial court granted Vallejo's motion for partial summary judgment on the affirmative defense of contributory negligence. At the instruction conference, BNSF requested an instruction on contributory negligence which the trial judge denied.

The jury trial began on April 6, 2010, and lasted 3 days. The jury returned a verdict in favor of Vallejo and awarded him $1,121,909 in damages. The jury award is apportioned as follows:

$60,000 for economic loss to date;
$665,909 for future economic loss;
$95,000 for noneconomic loss to date;
$225,000 for future noneconomic loss; and
$86,000 for future medical expenses.

BNSF moved to set aside the verdict and for a new trial. BNSF again argued that a contributory negligence instruction should have been given. The trial court denied BNSF's motion. BNSF timely appealed.

*Does this Court Have Jurisdiction to Consider this Appeal on the Contributory Negligence Claim?*

On appeal, Vallejo argues that this court does not have jurisdiction to consider BNSF's appeal regarding the contributory negligence claim because BNSF failed to appeal the partial summary judgment granted by the trial court on this issue. Vallejo maintains that this court does not have jurisdiction because BNSF's notice of appeal does not comply with K.S.A. 60-2103(b).

The controlling statute, K.S.A. 60-2103(b), provides: "The notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from,* and shall name the appellate court to which the appeal is taken." Failure to properly designate the judgment being appealed "can lead to a dismissal of part or all of an appeal." *Walker v. Regehr,* 41 Kan. App. 2d 352, 355, 202 P.3d 712 (2009).

Here, BNSF's notice of appeal states the following:

"[BNSF] intends to and does hereby appeal from the jury verdict entered in the above matter by the jury on April 8, 2010, the trial court's denial of defendant's motion for summary judgment, and the subsequent denial of defendant's post-trial motions in the court's rulings of May 17, 2010 (Journal entry of May 20, 2010)."

It is important to note that this is a specific notice of appeal, because it does not include any of the "catch-all" language this court has seen used in other notices.

The May 20, 2010, journal entry indicates the following rulings were made: (1) BNSF's motion for new trial; and (2) BNSF's request for judgment notwithstanding the verdict.

Vallejo argues that the notice of appeal fails to give this court jurisdiction to hear the issue regarding contributory negligence. Vallejo points out that the May 20, 2010, journal entry refers only to the motion for new trial and request for judgment notwithstanding the verdict. According to Vallejo, the bench ruling on the partial motion for summary judgment on the defense of contributory negligence was made on March 12, 2010. Vallejo further argues that BNSF never sought reconsideration of the partial summary judgment and failed to allege error in that ruling as a basis for its motion for new trial. Therefore, Vallejo contends that this court lacks jurisdiction to review that partial summary judgment ruling on contributory negligence.

We are guided in this inquiry by several past precedents that have considered what the requirements for a notice of appeal should be. For example, our Supreme Court in *Key v. Hein, Ebert & Weir, Chtd.*, 265 Kan. 124, 129, 960 P.2d 746 (1998), held that when we consider discrepancies between a notice of appeal and the issues briefed, we should reject requests to make the requirements of the notice of appeal technical or burdensome. In fact, our Supreme Court's approach has been to use a broad or "liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding" as required by the Kansas Code of Civil Procedure. See K.S.A. 60-102; *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 720, 869 P.2d 598 (1994).

Moreover, in *State v. Wilkins*, 269 Kan. 256, 270, 7 P.3d 252 (2000), our Supreme Court applied a list of factors to determine what issues the Court of Appeals had jurisdiction over based on the notice of appeal. In applying those factors, our Supreme Court held the following:

"Given that the notice of appeal 'should not be overly technical or detailed'; that the 'State does not generally take any significant action when receiving a notice of appeal'; that the typographical error in this case 'does not harm or even affect the State in any appreciable way'; that the State has not shown surprise or prejudice; that this court is to construe K.S.A. 60-2103(b) liberally to assure justice

in every proceeding; and that actions should be just, speedy, and inexpensively determined, we hold that the 'judgment of sentence' language found in Wilkins' notice of appeal sufficiently conferred jurisdiction on the Court of Appeals to determine the substantive issues raised in the robbery case." 269 Kan. at 270.

The factors applied in *Wilkins* are equally applicable in this case. Although the appealing party in *Wilkins* argued that there was a typographical error, which is not the issue here, our Supreme Court considered multiple other factors before concluding what issues were properly before the court. Additionally, Vallejo does not now contend that he was surprised or placed at a disadvantage by the contributory negligence issue BNSF briefed.

BNSF reasserted its objection to the contributory negligence issue at both the instruction conference and the motion for a new trial. While proposing a contributory negligence instruction, BNSF's counsel stated, "I think there are certainly considerations for the jury and grounds for contributory negligence." Moreover, in support of its motion for new trial, BNSF argued "[t]hat the trial court erred in failing to instruct the jury on the issue of contributory negligence and failed to include same in the verdict form."

Therefore, in broadly construing BNSF's notice of appeal in accordance with the opinion in *Hess*, we find that the notice of appeal was adequate to provide this court with jurisdiction to review the contributory negligence issue.

## *Whether Partial Summary Judgment Was an Appealable Order*

Next, Vallejo argues that BNSF failed to appeal the partial summary judgment so it is now merged into the final judgment. Vallejo contends that under K.S.A. 60-256(d), the trial court could not have submitted the issue of contributory negligence because it was no longer an issue before the court. Lastly, Vallejo maintains that because BNSF failed to identify the partial summary judgment in its notice of appeal, it abandoned that issue.

A partial summary judgment—one that disposes of fewer than all of the claims or issues between the parties—is not a final judgment. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 29, 59 P.3d 1003 (2002) (recognizing a partial summary judgment is "not a final judgment"). An order granting partial summary judg-

ment, leaving other issues to be resolved, is not an appealable order without a court's interlocutory certification. See *In re Estate of Countryman*, 203 Kan. 731, 736, 457 P.2d 53 (1969). K.S.A. 60-254(b) states that when more than one claim is involved, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination* that there is no just reason for delay *and* upon *an express direction* for entry of judgment." (Emphasis added.)

Here, there was no attempt by BNSF to satisfy the requirements of K.S.A. 60-254(b). Because the judgment lacked the required determinations it was not final, and therefore, was not appealable. *See State ex. rel. Board of Healing Arts v. Beyrle*, 262 Kan. 507, 510, 941 P.2d 371 (1997). Therefore, Vallejo's argument that this court does not have jurisdiction over the contributory negligence issue because BNSF failed to appeal the partial summary judgment fails.

Additionally, the cases Vallejo relies on to support his argument are not on point. Vallejo cites *Gates v. Goodyear*, 37 Kan. App. 2d 623, 625, 155 P.3d 1196 (2007), and *In re Marriage of Galvin*, 32 Kan. App. 2d 410, 411-12, 83 P.3d 805 (2004), which will not bear the weight of reliance that he places on them. In both cases, the trial court issued a final appealable order which the parties failed to timely appeal. Later, when the parties attempted to appeal those orders, the appeals were dismissed for lack of jurisdiction.

Our case is distinguishable from the *Gates* and *Galvin* cases. Here, the partial summary judgment was not an appealable order and the trial court did not certify it for an interlocutory appeal under K.S.A. 60-254(b). On the other hand, the trial court's denial of BNSF's motion for new trial was a final order which was appealable. Moreover, BNSF properly appealed the trial court's denial of its motion for new trial, where it again argued that an instruction should have been given on contributory negligence. As a result, the issue of contributory negligence was properly appealed and, therefore, this court has jurisdiction to address the issue.

*Whether BNSF Waived Its Contributory Negligence Argument for Failing to Brief It*

Lastly, Vallejo argues that BNSF failed to specifically challenge the partial summary judgment in its brief; therefore, it waived that argument. Vallejo maintains that this court cannot address the partial summary judgment issue because BNSF did not argue that the judgment was erroneous. Vallejo further argues that the trial court's grant of partial summary judgment is now moot and cannot be addressed on appeal.

Although BNSF in its brief does not argue that the trial court erred in granting the partial summary judgment, Vallejo's argument on this point is a red herring. A red herring occurs when the arguer introduces an irrelevant issue to the question at hand.

As stated earlier, the partial summary judgment was not appealable because it was not a final judgment. Therefore, it is irrelevant whether BNSF challenged the partial summary judgment, because BNSF appealed the denial of its combined motion for new trial and motion for a judgment notwithstanding the verdict, which was a final judgment. See *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992) ("We now hold that even if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied."). The same reasoning is also applicable when a partial summary judgment is granted, especially when the trial court states, as in this case, that it may later change its partial summary judgment ruling during the trial. Therefore, the key is whether the complaining party followed through with its argument in its posttrial motions, not whether it appealed the partial summary judgment ruling.

Therefore, BNSF did not need to mention the partial summary judgment because it followed through with the contributory negligence argument in its posttrial motion. BNSF filed a motion under K.S.A. 60-259 for a new trial combined with a motion for judgment notwithstanding the verdict. K.S.A. 60-250(b) allows for such a combined motion. K.S.A. 60-250(b) states as follows: "A motion

for a new trial under K.S.A. 60-259 and amendments thereto *may be joined* with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative." (Emphasis added.) At the hearing on this motion, the trial judge stated: "We're here on the defendant's Motion for New Trial. And I guess it's a motion to set aside the verdict and order a new trial, or in the alternative to declare a judgment in favor of the defendant."

Moreover, the record indicates that BNSF continued to challenge the trial court's ruling on contributory negligence. For example, BNSF objected at the instruction conference, arguing that an instruction on contributory negligence should be given. Additionally, BNSF further argued the contributory negligence issue in its posttrial motion. Based on these facts, Vallejo's waiver argument is clearly fallacious. Therefore, based on *Whalen*, it does not matter if BNSF challenged the partial summary judgment on contributory negligence as long as it raised the issue of contributory negligence in its dispositive motion, which it did.

### Did the Trial Court Err in Refusing to Give a Contributory Negligence Instruction?

BNSF argues that the trial court erred in refusing to submit to the jury an instruction on contributory negligence. BNSF maintains that there was ample evidence to submit the issue of contributory negligence to the jury. Additionally, BNSF further argues that the trial court erred by requiring evidence of a safety rule violation to prove contributory negligence.

Under FELA, an employee is entitled to recover damages if the employer's negligence played any part in producing the injury, no matter how slight; however, FELA also contains a rule for contributory negligence, so that when the employee is guilty of contributory negligence that employee is not barred from recovering damages, the damages are simply reduced in proportion to the amount of injury caused by the employee. *Taylor v. Burlington Northern R. Co.*, 787 F.2d 1309, 1313-14 (9th Cir. 1986); 45 U.S.C. § 53 (2006). Under FELA, contributory negligence is the doing of some act or an omission by the employee which amounts to a want of ordinary care for his or her own safety, which is the proximate cause

of his or her injury though concurrent with some negligent act of the employer. *Chesapeake & O. Ry. Co. v. Richardson*, 116 F.2d 860, 863 (6th Cir. 1941). The employer in a FELA case is entitled to an instruction on contributory negligence if there is "any evidence to support that theory." *Wise v. Union Pacific R. Co.*, 815 F.2d 55, 57 (8th Cir. 1987). "The question of how much of the injury is attributable to the employee's own actions and lack of due care for his own condition is to be decided by the jury if there is *any evidence at all* of contributory negligence." (Emphasis added.) *Taylor*, 787 F.2d at 1314.

BNSF relies on numerous cases to show that it was entitled to a contributory negligence instruction. First, BNSF cites to *Norfolk Southern R.R. v. Ferebee*, 238 U.S. 269, 273, 35 S. Ct. 781, 59 L. Ed. 1303 (1915), which held that

"[d]amages and contributory negligence are so blended and interwoven, and the conduct of the plaintiff at the time of the accident is so important a matter in the assessment of damages, that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury."

Next, BNSF relies on *Sloas v. CSX Transp., Inc.*, 616 F.3d 380 (4th Cir. 2010). Sloas was a sheetmetal worker who injured his back while attempting to remove a damaged valve from a fuel tank. Sloas sued CSX for negligence under FELA and obtained a jury award in his favor. The trial court gave an instruction on contributory negligence, which reduced Sloas' award, and Sloas appealed.

The Fourth Circuit Court of Appeals held that "the jury was entitled to reach the commonsense conclusion that a mechanical means of removing the Snyder valve, such as the use of the sawzall, entailed less risk of physical injury than the *repeated manual use* of a pipe wrench." The Court further held that the jury's finding of contributory negligence could be based on the fact that Sloas either "failed to initially use the sawzall to remove the valve, or to make a sufficient effort to locate the appropriate blades for the saw." 616 F.3d at 393.

The facts in *Sloas* are similar to our facts. Here, Vallejo was a carman who injured his back while trying to fabricate a sill step. Vallejo noticed that his truck did not have any tools, so he went to

the material department to retrieve tools. The material man was not in the material department, so Vallejo took what tools he could find and went back out to the job site. Vallejo knew that he did not have the appropriate tools for the job but chose to continue working. Vallejo also knew that if he had the right tools and equipment, then fabricating a sill step would not require much physical exertion. Because Vallejo did not have the appropriate tools, he had to bend and twist the metal repeatedly to force it into the desired position. Vallejo testified that he knew that the torch he used did not heat the metal to the color that he would normally strive for to do the job. Moreover, he also knew that if he had a better torch, he would have heated the metal more than he did here. While fabricating the sill step with inadequate tools, and using greater exertion than normal, Vallejo injured his back.

Just like in *Sloas,* if Vallejo would have had the appropriate tools, the job would have entailed less risk of physical injury than the "repeated manual use" of the improper tools. Additionally, the jury could have found, like it did in *Sloas*, that Vallejo failed to initially use the right tools, or to make a sufficient effort to locate the appropriate tools.

Another applicable case is *Gish v. CSX Transp., Inc.*, 890 F.2d 989 (7th Cir. 1989). Gish sued his employer under FELA for back injuries he received while attempting to remove a manhole cover, a task that should have been routine. Gish used a prybar to wedge up the manhole cover and then attempted to lift it the rest of the way by hand. The cover became wedged, so Gish gave it a good yank, which seriously injured his back. The jury found for Gish, but attributed 50% of the negligence to him, which reduced his award by half. Gish appealed arguing that the jury should not have been able to consider contributory negligence.

The Seventh Circuit Court of Appeals held that the trial court properly allowed the jury to consider contributory negligence. The Court determined that there was evidence of several safe alternatives for removing the manhole cover that Gish could have used, such as asking his supervisor or someone else for assistance, walking a few blocks to obtain a carhook, or using a forklift; therefore,

the jury could have found that the method Gish used was negligent. 890 F.2d at 992.

Here, Vallejo contends that there were no other tools available to him so he did not have a choice but to use the inadequate tools for the job. Vallejo went to the material department to get better tools, but when the material man was not there he took it upon himself to find what tools he could. Vallejo did not wait for the material man to come back. Instead, he chose to use whatever tools he could find because he is "not the type that's going to sit around on my butt and not do anything for 8 hours." There is also conflicting evidence on whether Vallejo called a supervisor to request the proper tools.

In both instances, Gish and Vallejo knew what tools or equipment was needed to safely complete the routine tasks. They both knew that the method they chose would require more physical exertion than normal, but chose to continue on. Based on these similarities, a jury could have found, as it did in *Gish*, that there was evidence of several safe alternatives that Vallejo could have used to fabricate the sill step; therefore, Vallejo was negligent in using the method he chose.

In his brief, Vallejo attempts to argue that the evidence demonstrated an assumption of risk rather than contributory negligence. Vallejo makes this argument because assumption of risk is not a permissible defense in a FELA case. See *Brown v. Cedar Rapids and Iowa City Ry. Co.*, 650 F.2d 159, 165 (8th Cir. 1981); 45 U.S.C. § 54 (2006). Assumption of risk is the "voluntary, knowledgeable acceptance of a dangerous condition that is necessary" for an individual "to perform his duties." *Taylor*, 787 F.2d at 1316. In contrast, contributory negligence is "a careless act or omission on the plaintiff's part tending to add new dangers" to preexisting conditions. 787 F.2d at 1316.

Vallejo's brief states: "At most, the evidence demonstrated Vallejo knew he did not have the right tools for the job, and knew the tools he did have were not functioning properly, such that the job was longer and harder than normal." By admitting these facts, Vallejo implicitly concedes that there is sufficient evidence in the record of contributory negligence. Evidence that Vallejo failed to ap-

propriately utilize the safest means to fabricate the sill step clearly constitutes evidence of contributory negligence, as it does not pertain to risks inherent in Vallejo's job. Instead, this evidence went to a careless act or omission on Vallejo's part that added new risks to those already inherent in his task.

Additionally, the trial court explicitly ruled that this was not an assumption of risk case. The trial judge stated: "[A]ssumption of risk involves the plaintiff recognizing the danger involved, and then going ahead knowing that what his employer is asking him to do is dangerous. And doing it and being injured. . . This is not an assumption of risk case."

Based on the evidence presented at trial, it is readily apparent that sufficient evidence existed to submit the issue of contributory negligence to the jury.

*Whether the Trial Court Properly Held that BNSF Needed to Show a Safety Rule Violation to Prove Contributory Negligence*

Finally, before trial, the trial court incorrectly required BNSF to submit evidence of a safety rule violation before the court would instruct on contributory negligence. The trial judge stated, "I'm not going to instruct that the jury can find contributory negligence on the plaintiff's part, unless the plaintiff gets on the stand and says I violated this rule and this led to my injury." BNSF failed to submit such evidence, and therefore, the trial court granted partial summary judgment in favor of Vallejo on BNSF's defense of contributory negligence. Again, the trial judge stated: "I'm not going to give an instruction on contributory negligence of the plaintiff. The jury isn't going to have the option of considering that."

The trial judge admitted that he had only tried a few FELA cases and he stated, "I don't understand the subtleties of FELA." Additionally, the trial judge failed to cite any authority to support the standard he used for proving contributory negligence. Moreover, Vallejo also failed to cite any authority to support the trial judge's standard that was applied. Currently, there is no case law that states that a safety rule violation is required to prove contributory negligence. In fact, the court in *Wise v. Union Pacific R. Co.*, 815 F.2d 55, 57 (8th Cir. 1987), explained that a plaintiff is contributorily

negligent if he or she has failed to exercise due care, which is measured by the reasonable person standard. The court further stated that due care, may or may not be fully defined by the relevant safety rules. "A reasonable person may fully comply with rules established by an employer to promote safety at the workplace and, under a reasonableness standard, still be expected to take other precautions in performing work duties." 815 F.2d at 57. The Eighth Circuit Court of Appeals held that the plaintiff's compliance with the employer's safety rules did not establish, as a matter of law, that the plaintiff was free from negligence.

Vallejo tries to distinguish the *Wise* case from his case by arguing that in *Wise*, the plaintiff was using the safety rules as a shield, maintaining that compliance with safety rules precluded a finding of contributory negligence. Vallejo argues that he is not using the safety rules as a shield; he simply argues that there is no evidence of contributory negligence, with or without the safety rules. The problem with this argument is that the trial judge was essentially using the safety rules as a shield for Vallejo by requiring BNSF to show a safety rule violation to prove contributory negligence.

Based on the reasoning in *Wise*, the trial judge clearly erred in requiring BNSF to show that Vallejo had violated a safety rule before the court would instruct on contributory negligence. We reverse and remand for a new trial based on this error. See *Combs v. Norfolk and Western Rwy. Co.*, 256 Va. 490, 497-98, 507 S.E.2d 355 (1998) (reverse and remand for new trial where trial court erred in striking evidence of contributory negligence and refused to submit issue to jury).

We also find that the trial court abused its discretion in refusing to give an instruction on contributory negligence based on the evidence presented at trial. Vallejo's testimony alone established that he may have been guilty of contributory negligence. Vallejo had performed the task of fabricating a sill step several times before and knew what tools were required to complete the task. No one told Vallejo what tools to use; he chose the tools on his own. Moreover, Vallejo chose to continue working when he knew that the tools were not the best tools for the job and he knew that the tools would make the job harder for him. Vallejo failed to exhaust all

safe alternatives and instead chose a method that required excessive physical exertion, which resulted in his injury. Vallejo's lack of due care for his own condition may have reduced BNSF's liability, and the jury should have been allowed to consider whether Vallejo acted without due care.

Reversed and remanded for a new trial.