(233 P.3d 758)
No. 102,582

MARTIN-MANATEE POWER PARTNERS, LLC, *Plaintiff*, v. PEERLESS MANUFACTURING CO., *Appellant*, v. CONTROLS INTERNATIONAL, INC., *Appellee*.

Opinion filed June 18, 2010.

*Christopher J. Lang*, of Rabbitt Pitzer & Snodgrass, P.C., of St. Louis, Missouri, and *Nikki Cannezzaro*, of Franke Schultz & Mullen, P.C., of Kansas City, Missouri, for appellant.

*Steven B. Befera*, of Miami, Florida, *Barry W. McCormick* and *Edward M. Boyle*, of McCormick, Adam & McDonald, P.A., of Overland Park, and *Jenifer Svancara*, of Law Offices of Donald B. Balfour, of Kansas City, Missouri, for appellee.

Before McANANY, P.J., MALONE and STANDRIDGE, JJ.

McANANY, J.: Peerless Manufacturing Co. (Peerless) challenges the district court's dismissal of its third-party action against Controls International, Inc. on jurisdictional grounds. It also contends that the district court erred in not permitting it to conduct discovery on the jurisdiction question.

This case arises out of a fire at a power plant in Florida. Martin-Manatee Power Partners, LLC (MMPP), contracted with Florida

Power & Light Company to design and construct a natural gas-fired power plant in Martin County, Florida. Peerless supplied and installed four gas heater skids in the plant. The purchase order for the skids specified that any litigation regarding the skids would occur in Kansas and be governed by Kansas law.

In September 2005, one of the gas heater skids supplied by Peerless allegedly overheated, ruptured, and caused a fire at the plant. MMPP claimed that components in a gas valve in the skid were incorrectly installed, thereby causing the release of gas and the resulting fire. MMPP claimed it cost over $5.7 million to repair the damage to the plant. MMPP sued Peerless in Johnson County on various legal theories.

*Jurisdiction*

In May 2008, Peerless asserted a third-party claim against Controls International, Inc. (Controls), a Texas corporation, asserting that Peerless purchased the claimed defective valve from Controls. Peerless sought indemnity from Controls for the claims asserted by MMPP. While the transaction was an intra-Texas sale (Controls shipped the valve from its Texas office to Peerless' Texas office), Peerless claims that Kansas courts can exercise jurisdiction over Controls because of its business activities in Kansas.

Controls responded with its motion to dismiss, asserting that the court lacked jurisdiction under Kansas' long-arm statute, K.S.A. 2009 Supp. 60-308(b). Further, it contended, extending in personam jurisdiction over Controls would deny it due process because Controls has not purposefully availed itself of the privileges and benefits of Kansas law, because the claim does not arise out of forum-related activities, and because jurisdiction over Controls would be unreasonable. Controls attached to its motion an affidavit from its chief financial officer, Ed Watkins. Watkins stated in his affidavit that Controls is not registered to do business in Kansas, does not have an authorized agent in Kansas, is not obligated to pay taxes in Kansas, does not have any offices in Kansas, and does not lease or own any real property in Kansas.

*Discovery*

In June 2008, Peerless moved for leave to conduct limited discovery on the personal jurisdiction issue. Without any ruling on its motion, Peerless proceeded with discovery on the jurisdiction issue. When the parties were at loggerheads over discovery issues, the court conducted a hearing in September 2008. No journal entry was prepared to memorialize the court's ruling. It is difficult to determine exactly what was ordered by the court from the colloquy between court and counsel at the hearing. However, we have the benefit of the court's bench note which provides in part:

"1. Jurisdiction issue taken under advisement.

"2. 3rd party def discovery limited to:

A. How many times this particular gauge was produced & delivered within the U.S. from September 2003 to present.

B. does the 3rd party defendant do business in all 50 states & to what extent."

It is unclear how discovery on these two points would help resolve the issue of whether Controls had transacted business in Kansas to the extent necessary to justify the Kansas court exercising jurisdiction over it. In any event, Controls responded to Peerless' outstanding discovery by stating that it had not produced or shipped any orders of the particular valve in question to Kansas during the relevant time period. Peerless objected, claiming that Controls' answers were inadequate because it limited its response to transactions involving the type of valve involved in the Florida fire.

In October 2008, the court held a conference call hearing on the ongoing discovery dispute. The court stated that it was expecting discovery on the number (but not dollar volume) of sales of, and orders for, all products in Kansas, but not service calls in Kansas, for the period beginning September 2003.

In December 2008, Controls filed its responses to Peerless' discovery requests. The invoices in the record produced by Controls show the following for the relevant 5-year period:

- Three direct sales by Controls to customers located in Kansas (two in 2004 and one in 2005).
- Seven sales by Controls to customers outside of Kansas for delivery to entities located in Kansas (one in 2004, one in 2005, one in 2006, three in 2007, and one in 2008).

- Twelve sales to Power Specialties in Missouri for delivery to entities in Kansas (one in 2004, six in 2005, three in 2006, one in 2007, and one in 2008).
- One sale by Type K to a Kansas customer (2004).
- One sale by Type K to Power Specialties in Missouri for delivery to an entity in Kansas (2006).
- Four sales by K-Tork to Kansas customers (three in 2007 and one in 2008).

*Ruling on Motion to Dismiss*

On February 2, 2009, the district court held a telephone conference hearing on Controls' motion to dismiss for lack of personal jurisdiction. Peerless renewed its objections to Controls' discovery responses and the limitations placed on discovery regarding the jurisdiction issue. Peerless complained that Controls failed to provide information on business in other states in order to gauge whether the Kansas transactions represent a significant or insignificant portion of its overall business. It renewed its request for additional discovery on the issue of jurisdiction. Controls argued that this additional information is irrelevant under the jurisdictional analysis set forth in *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162 (2006).

The district court refused to permit any further discovery on the issue and ruled that it lacked personal jurisdiction over Controls. In reaching this determination, the district court relied on the relative paucity of sales transactions during the relevant 5-year period, as well as the fact that Controls had no office, registered agent, designated employee, or property within Kansas. Based on these facts, the court applied *Merriman* to determine that Kansas lacked personal jurisdiction. The court concluded that Peerless failed to establish that Controls has had continuous and systematic contacts with Kansas. The district court further noted that no amount of additional discovery would change the information already provided or result in a different legal conclusion.

Peerless appeals, claiming the district court erred in denying its motion for limited discovery and in granting Controls' motion to dismiss.

*Discussion*

I. *Jurisdiction*

On appeal, Peerless first argues that the district court erred in granting Controls' motion to dismiss for lack of personal jurisdiction. The statute by which Peerless seeks to invoke jurisdiction is K.S.A. 2009 Supp. 60-308(b)(2). It argues in its brief: "The facts and reasonable inferences to be drawn therefrom demonstrate Controls' substantial, continuous and systematic contact with the state of Kansas under K.S.A. 60-308(b)(2) supporting jurisdiction consistent with due process."

Whether jurisdiction exists is a question of law which we review de novo. *Merriman,* 282 Kan. at 439 (citing *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 185, 106 P.3d 483 [2005]). Peerless bears the burden of establishing jurisdiction over Controls. *Merriman,* 282 Kan. at 439. However, Peerless need only make a prima facie showing of jurisdiction. Because the district court's ruling on the jurisdiction issue was based on the pleadings, affidavits, and other written materials, any factual dispute must be resolved in favor of Peerless. See 282 Kan. at 439.

Peerless claims that Controls is subject to the jurisdiction of the courts in Kansas by reason of our long-arm statute, K.S.A. 2009 Supp. 60-308(b). Kansas courts liberally construe the long-arm statute to the full extent permitted by the Due Process Clause of the United States Constitution when asserting personal jurisdiction over a nonresident defendant. If the statutory predicate for extending personal jurisdiction to Controls is established, we must then determine whether the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Kluin v. American Suzuki Motor Corp.,* 274 Kan. 888, 894, 56 P.3d 829 (2002).

The Kansas long-arm statute, K.S.A. 2009 Supp. 60-308(b), was amended in 2006. L. 2006, ch. 49, sec. 1-3. Prior to the 2006 amendments, the statute only expressly allowed personal jurisdiction in actions arising from the defendant's contacts with Kansas, such as transacting business in Kansas, committing a tort in Kansas, or entering into a contract with a Kansas resident to be performed at least in part in Kansas. K.S.A 60-308(b).

The 2006 amendments to K.S.A. 60-308(b) added section (b)(2), which provides express authority for extending personal jurisdiction to defendants for acts committed elsewhere:

"A person may be considered to have submitted to the jurisdiction of the courts of this state for a cause of action which did not arise in this state if substantial, continuous and systematic contact with this state is established that would support jurisdiction consistent with the constitutions of the United States and of this state." K.S.A. 2009 Supp. 60-308(b)(2).

The statute as amended borrows language from the United States Supreme Court's minimum contacts test for general jurisdiction expressed in *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984), which requires "continuous and systematic general business contacts" with the forum state. The statute now allows Kansas courts to assert in personam jurisdiction consistent with the breadth of federal due process. See 4 Gard and Casad, Kansas C. Civ. Proc. 4th Annot. § 60-308 (2009-10 Supp.). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

Our first step involves determining whether Controls had substantial, continuous, and systematic contact with Kansas so as to invoke the provisions of K.S.A. 2009 Supp. 60-308(b)(2). Peerless claims that Controls' aggregate sales activity, website, and general business contacts with Kansas satisfy the requirements of the statute. In evaluating the extent of Controls' contacts with Kansas, we examine the factors enunciated in *Kuenzle v. HTM Sport-UND Freizeitgerte*, 102 F.3d 453, 457 (10th Cir. 1996):

"(1) Whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertising, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." (Citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1524, 1533 [10th Cir. 1996]).

Excluding sales to Power Specialties, Inc., which we will discuss further, the record discloses a total of 20 transactions in Kansas involving Controls in the relevant 5-year time period, including transactions involving what appear to be two divisions of the company named Type K and K-TORK. There is no indication that Type K and K-TORK have separate corporate existences. To provide some perspective, Peerless points out that Controls represents through its website that it "has become the leading seller, manufacturer and distributor for valves, valve automation, actuators, and other control products to users in all industries," with sales and service in the United States and abroad.

Peerless seeks to expand Controls' presence in Kansas beyond these 20 transactions over 5 years by including the sales activities of two other entities. One of them is ABZ Manufacturing, Inc. Peerless argues that one of Controls' product lines, ABZ Valves, is manufactured by a division of ABZ Manufacturing, Inc. (ABZ), which is a Kansas corporation located in Madison, Kansas. According to ABZ's website, ABZ distributes its products in all 50 states as well as over 17 foreign nations. Apparently, Controls is one of its distributors.

Controls lists on its website products from about 25 suppliers. One of them, for example, is Siemens; apparently referring to Siemens, AG, the global supplier of products for industry, energy, health care, and consumers headquartered in Munich, Germany. If selling ABZ's products is evidence of Controls' presence in Kansas, does selling Siemens products evidence Controls' presence in Germany? Obviously not.

ABZ sells its products through Controls, not the other way around. The issue is not whether ABZ has a presence in Texas where Controls is located, but whether Controls has a presence in Kansas where ABZ is located. The fact that ABZ sells Kansas products through a distributor in Texas may possibly tell us something about ABZ's presence in Texas, but it tells us nothing about Controls' presence in Kansas.

Incidentally, the existence of Controls' website does not of itself significantly add to the concept of systematic, substantial, and continuous contact with Kansas. Controls' website is passive; that is, it

provides information about the company and its products but does not permit customers (from Kansas or elsewhere) to place orders for products via the website. See *Kluin*, 274 Kan. at 901-02.

The other entity through which Peerless seeks to expand Controls' presence in Kansas is Power Specialties, Inc. Type K, which apparently is a division of Controls, has its own website on which it states that its products are sold "through a network of exclusive, highly trained manufacturer's representatives." One such representative is Power Specialties, Inc. (Power Specialties), located in Wichita, Kansas. Type K is on the list of companies represented by Power Specialties on the Power Specialties' website. Controls is not.

Power Specialties is headquartered in Missouri, with offices in Nebraska, Iowa, and Kansas. It represents about 14 different manufacturers of industrial controls and instruments. As noted earlier, Controls made sales to Power Specialties for delivery to entities in Kansas. According to the invoices in the record, during the relevant 5-year time period Power Specialties was involved in only 13 transactions involving Controls or Type K products. In each of these transactions, the buyer was identified as Power Specialties in Raytown, Missouri. In each transaction the customer number was identified as "00-POWE004," apparently referring to Power Specialties and not an end user in Kansas. Though purchased by Power Specialties, the product identified in each invoice was shipped to a customer in Kansas.

Because Controls is not listed by Power Specialties as one of the companies it represents, it is unclear whether Power Specialties acted as a sales representative for Controls in these transactions or as a reseller of goods purchased from Controls. For the purpose of our analysis, we construe the evidence so as to favor Peerless and assume the former. Nevertheless, this level of activity in Kansas by an independent manufacturers' sales representative on behalf of Controls does not substantially add to the existing evidence by which we measure the extent of Controls' presence in Kansas.

Including the sales in which Power Specialties acted as the intermediary, Controls engaged in only 28 transactions in Kansas during the relevant 5-year period. It is also important to note that

Controls is not registered with the Kansas Secretary of State as a foreign corporation doing business in Kansas, is not obligated to pay taxes in Kansas, does not maintain a bank account in Kansas, does not have an office or registered agent in Kansas, and does not own or lease any real property in Kansas.

Peerless' assertion that Controls holds itself out as "the leading seller, manufacturer and distributor for valves," with sales and service in the United States and abroad, does not seem to advance Peerless' position. To the contrary, it suggests the relative insignificance of 28 sales in Kansas over a 5-year period.

The issue was addressed in a similar context in *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004), an action in Colorado for breach of contract and tortious interference following the collapse of a planned joint venture to conduct uranium trading activities. The court determined that two dozen transactions in Colorado over a period of 8 years (the last one being 4 years before suit was filed) were insufficient to meet the high burden of showing continuous and systematic general business contacts to support personal jurisdiction over the defendant in Colorado.

In *Trierweiler*, 90 F.3d at 1533, plaintiff brought an action for fraud and negligent misrepresentation in federal court in Michigan against a Colorado law firm and others. The appellate court determined that Michigan lacked personal jurisdiction over the Colorado law firm under general jurisdiction principles. The law firm had no office in Michigan and represented only 24 Michigan residents in 104 different legal matters during the relevant time period. The court found these contacts insufficient to warrant exercising personal jurisdiction in Michigan over the firm.

In *Capitol Federal Sav. Bank v. Eastern Bank Corp.*, 493 F. Supp. 2d 1150 (D. Kan. 2007), Capitol Federal claimed that Eastern Bank misappropriated Capitol Federal's TRUE BLUE service marks. The district court determined that the court in Kansas lacked personal jurisdiction over Eastern Bank and transferred the case to Massachusetts for further proceedings. Eastern Bank operated primarily in the Boston area and serviced customers primarily in Massachusetts and the adjoining states in New England. However, it had 64 customers in Kansas for whom it provided

ongoing banking services. Nevertheless, the court found these contacts insufficient to support the court in Kansas exercising jurisdiction over it.

Peerless believes *Scharff v. CRST, Inc.*, 2002 WL 922131 (D. Kan. 2002) (unpublished opinion), is helpful to its cause. We do not. CRST, an interstate trucking company, conceded that it picked up, transported, and delivered goods throughout the state. From this, the court concluded that the plaintiff had made the necessary showing of continuous and systematic contacts. CRST's physical presence in the state was absolutely essential in order for it to carry out its business. The conduct of Controls' business is not predicated on the same physical presence in the state.

Our analysis leads us to conclude that Controls has not engaged in a level of business activity in Kansas to warrant our courts extending jurisdiction over it for a transaction that occurred beyond our borders. Controls' contacts with Kansas have not been sufficiently "substantial, continuous and systematic" so as to "support jurisdiction consistent with the constitutions of the United States and of this state." K.S.A. 2009 Supp. 60-308(b)(2). The district court did not err in sustaining Controls' motion to dismiss for lack of jurisdiction.

## II. *Discovery*

Peerless asserts that the district court abused its discretion in denying further discovery on the issue of jurisdiction. Peerless bears a heavy burden on this issue because the district court's control over discovery is a matter within its sound discretion. Appellate courts do not disturb a district court's order regarding discovery absent a showing of a clear abuse of discretion. See *Kluin*, 274 Kan. at 891. Judicial discretion is abused when no reasonable person would take the position adopted by the district court. See *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). Further, whether discovery is warranted to resolve a dispute over jurisdiction is an issue of fact to be resolved on a case-by-case basis. "[L]eave for jurisdictional discovery is properly denied where the plaintiff does not show that facts exist which would warrant the

denial of the defendant's motion to dismiss for lack of [personal] jurisdiction." *Kluin*, 274 Kan. at 892.

It is important to note that Peerless was not denied discovery on the jurisdiction issue. Peerless asked for limited discovery. It was afforded the opportunity to conduct limited discovery. The court ordered: "All other discovery is put on hold." The court hoped to expedite the disposition of this issue which concerned only the third-party action. The court encouraged the parties to set up telephone conferences with minimal briefing to enable the court to promptly resolve any discovery disputes. In addition to formal discovery, the parties had the use and benefit of information on the internet that related to the relevant business activities. It was only after discovery had been ongoing for about 7 months that the district court ended it and ruled on the motion to dismiss.

Diligent trial counsel always feel compelled to turn over one more rock in discovery. Admittedly, there are many rocks that could be turned over on this issue. However, the district court pointed out that additional discovery is unlikely to change the central facts disclosed so far. Those facts include Controls not being domiciled in Kansas; its lack of ties to Kansas through the ownership of property, the payment of taxes, the maintenance of a bank account, or the presence of any employees within the state; and its small number of product sales during the relevant time period. These factors, taken together, indicate the lack of a substantial, continuous, and systematic presence in Kansas.

The district court recognized that "it's always a balance between how much discovery should be done at this point in time on a motion to dismiss." Thus, it is certainly true that a different judge could have extended discovery further. But this is not to say that the district court abused its discretion in ending it. To justify further discovery, *Kluin* teaches us that Peerless needed something more than speculation that Controls might be lying in its discovery responses, that there may be more sales out there, or that there may be evidence of more contacts out there. We are satisfied that there is ample basis for the court saying, as the district judge did

here, that enough's enough. We find no abuse of discretion in ending discovery on this issue.

Affirmed.