NOT DESIGNATED FOR PUBLICATION

No. 114,053

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM LUTHER, *et al.*,
*Appellants*,

v.

NOLAN H. JACKSON and SYLVIA JACKSON, *et al.*,
*Appellees*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed July 22, 2016.
Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellants.

*James R. Gilhousen*, of Crockett & Gilhousen, of Wichita, for appellees.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: This is the second lawsuit which has come before our court regarding the failed sale of Wichita Arms, Inc. (Wichita Arms), a Kansas Corporation founded by Nolan and Sylvia Jackson in 1982, to William Luther and Wichita Precision, LLC (Wichita Precision), a limited liability company formed and owned by Luther for the purpose of buying Wichita Arms. After an unfavorable result in the original lawsuit, Luther, f/d/b/a Andover Sign Company, LLC; Transterra LLC; Wichita Precision; and Wichita Engineering LLC (Plaintiffs) sued Nolan and Sylvia Jackson, d/b/a Wichita Arms; Skip Nelson; Timothy McNally; and Mac's Gunsmithing, LLC (Defendants).

1

The district court dismissed Plaintiffs' lawsuit on summary judgment, and Plaintiffs subsequently filed this timely appeal challenging several of the district court's procedural rulings. Because Plaintiffs have failed to address the basis for the summary judgment ruling dismissing their lawsuit—the doctrine of res judicata—and have failed to show error in the district court's procedural rulings, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Nolan decided to sell Wichita Arms. Following contract negotiations, on February 7, 2008, the Jacksons and Wichita Arms (collectively referred to as Seller) entered into a written purchase agreement with Luther and Wichita Precision (collectively referred to as Buyer). *Wichita Arms, Inc. v. Wichita Precision*, No. 103,866, 2011 WL 4031509, at *1 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 948 (2012). The sale, however, was never consummated. Buyer claimed that Seller was not entitled to any payment until Seller transferred its firearms license issued by the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF). On the other hand, Seller insisted the contract required Buyer to pay $50,000 at the execution of the agreement and even if the contract read as Buyer incorrectly contended, it could not transfer the license to Buyer before Wichita Arms changed hands because such licenses are nontransferable unless a change of control over the corporate licensee occurs.

Ultimately, Seller sued Buyer in Sedgwick County District Court for nonpayment of the purchase price and related damages, and Buyer counterclaimed, seeking damages for Seller's alleged breach of contract. Following a 4-day trial, the district court found that under terms of the contract, Seller was not required to transfer the ATF firearms license prior to receipt of the purchase price and, thus, Buyer breached the contract by failing to pay when the contract was executed which, in turn, relieved Seller of any further contractual obligations. Accordingly, the district court awarded Seller $39,376.36 for unjust enrichment and denied all of Buyer's counterclaims.

2

Buyer timely appealed to our court. Buyer challenged "the district court's interpretation of the contract, its award of damages to Seller, its failure to allow Buyer to amend its pleadings to claim specific performance, and its failure to award damages and/or the remedy of specific performance to Buyer." 2011 WL 4031509, at *1. Our court affirmed, concluding: "The parties did not intend and the contract did not require that Seller transfer the ATF firearms license before Buyer paid the amount called for in the purchase agreement." 2011 WL 4031509, at *4. We also found that because Seller did not breach the contract, the district court did not err when it refused to award Buyer any relief on the counterclaims. 2011 WL 4031509, at *5. Subsequently, Buyer petitioned our Supreme Court for review, but that request was denied on May 21, 2012. About a year later, in November 2013, the Jacksons sold Wichita Arms to Timothy F. McNally, the owner and operator of Mac's Gunsmithing, LLC.

On May 5, 2014, Plaintiffs sued Defendants in Butler County District Court for more than $800,000 in damages. The verified petition, drafted by Plaintiffs' counsel, Eric J. Kidwell, alleged that Plaintiffs "sustained damages, in tort and fraud, as a result of tortuous [*sic*] and fraudulent . . . business dealings and transactions." The petition further alleged that Defendants had not only acted in bad faith, Defendants "knowingly, wil[l]fully, tortuously [*sic*] and fraudulently withheld information, deceived and stole from the Plaintiffs, defamed the Plaintiffs and caused the destruction of all the [P]laintiffs['] businesses." Notably, the petition did not set forth any facts as to the "business dealings and transactions" at issue, nor did it indicate which defendant allegedly committed which tortious act.

Each of the defendants filed an answer alleging various affirmative defenses including failure to state a cause of action, statute of frauds, estoppel, statute of limitations, and res judicata. Defendants then served written interrogatories on Plaintiffs in an attempt to determine the nature of Plaintiffs' claims, to obtain specifics about Plaintiffs' calculation of damages, and to discern whether the claims were barred by the

statute of limitations or the doctrine of res judicata. To each of Defendants' questions, however, Plaintiffs responded they could not specifically answer at that time. Likewise, in response to Defendants' requests for production, Plaintiffs' claimed they had "no documents responsive to the [r]equest for [p]roduction." As a result, Defendants filed a motion to compel discovery on October 14, 2014.

Plaintiffs responded to the motion by indicating they believed there was fraud in the inducement of the purchase agreement for Wichita Arms because Defendants had no ability to comply with the sale because they were not in compliance with ATF regulations and the ATF revoked Wichita Arms' firearms license after a hearing held on March 10, 2011. Plaintiffs claimed, however, they were unable to respond to Defendants' discovery requests because they were unable, at that time, to definitively determine if fraud occurred for several reasons. First, Luther's attorneys in the Sedgwick County litigation were refusing to provide him with copies of the files, transcripts, correspondence, and discovery from that case because these firms had judgments against Luther for unpaid attorney fees. Second, although counsel for ATF had refused to honor a subpoena, she indicated that ATF would attempt to provide a transcript from the hearing on Wichita Arms' firearms license in the future. Finally, Plaintiffs insisted that Defendants had provided inadequate responses to their written interrogatories and, thus, Plaintiffs filed their own motion to compel discovery on October 17, 2014.

On October 21, 2014, the district court held a hearing on the parties' motions to compel discovery. The district judge granted Defendants' motion and noted that "an order compelling discovery from the[e] [c]ourt might be of some assistance" to Plaintiffs in their effort to obtain Luther's client files from the previous litigation. Accordingly, the district court granted Plaintiffs 60 days from the issuance of the order to comply with Defendants' discovery requests. The district court, however, denied Plaintiffs' motion to compel, finding that Defendants provided "reasonable and adequate responses to each and every one of those interrogatories."

4

On January 6, 2015, Kidwell moved to withdraw from his representation of Plaintiffs due to illness. According to Kidwell, Plaintiffs and Defendants were aware of his health condition, and although Plaintiffs did not oppose his withdrawal, they were requesting adequate time to seek other counsel. Kidwell also requested an extension of the discovery deadline because Plaintiffs still had an extensive amount of discovery to review and "it [was] obvious to Plaintiffs . . . that much more time [was] necessary for future Motions, Depositions, and further investigation into the Plaintiffs['] claims." In response, Defendants had no objection to Kidwell's withdrawal from the case provided substitute counsel entered a simultaneous appearance.

On January 29, 2015, the Defendants filed motions for summary judgment or, alternatively, for dismissal of Plaintiffs' case with prejudice. Specifically, Defendants contended that Plaintiffs' claims were barred because they failed to state a cause of action, were precluded by the doctrine of res judicata, and were filed in violation of the applicable statutes of limitations. According to Defendants, the doctrine of res judicata, which "bars not only claims which were actually litigated in a previous proceeding but also claims which could have been asserted in that proceeding," disallowed Plaintiffs' claims. This was because Plaintiffs were merely relitigating the Sedgwick County case, because "[t]he gravamen of all Plaintiffs' claims in the case at hand [was] that the 2008 case and the ensuing appeal were wrongly decided." Defendants argued that all of Plaintiffs' claims were either actually litigated in the prior case or could and should have been litigated. Defendants also asserted the counterclaims Luther and Wichita Precision raised in that lawsuit were based on several legal theories, including breach of contract, fraud, defamation, quantum meruit for Luther's work at Wichita Arms, compensation for lost rent on a building Luther intended to rent to Wichita Arms, nondisclosure of records, and noncompliance with ATF rules and regulations.

On February 9, 2015, 10 days prior to the expiration of Plaintiffs' time to reply to Defendants' motions for summary judgment, the district court held a hearing to consider

5

Kidwell's motion to withdraw and extend/reopen discovery. At the hearing, Kidwell contended that due to the side effects from his medical treatment, he was unable to continue representing Plaintiffs. Kidwell explained, "My client is very aware that if somebody does not enter in a worst-case scenario, he's going to have to represent himself, but with the motions that were hand-delivered, there's no way I can answer those." Kidwell indicated, however, that he had counsel in the courtroom from the Law Office of Jerry K. Levy who was "very interested in entering the case."

For their part, Defendants requested that Kidwell's motion to extend the agreed-upon October 2014 discovery deadline and his motion to withdraw as counsel be held in abeyance until the summary judgment motions were heard and Plaintiffs' new counsel entered an appearance because they believed the case could be disposed of on summary judgment. Plaintiffs' prospective new counsel subsequently informed the court that her firm had "just learned of this case a very, very short time ago," and although she was interested in representing Plaintiffs, she needed "to nail down [the] specifics of that representation," a topic she and Plaintiffs had not begun to discuss. Prospective counsel maintained that in the interest of judicial economy, her firm planned to make a decision that day or the next, and she thought a 20-day extension of time to reply to the motions for summary judgment would give her sufficient time to adequately respond in the event she agreed to represent Plaintiffs.

As a result, the district court sustained Defendants' request to hold Kidwell's motion to withdraw in abeyance until the prospective counsel for Plaintiffs had an opportunity to decide whether she would enter an appearance. In the interest of fairness, the district court gave Plaintiffs until March 13, 2015, to respond to the summary judgment motions. The district judge explained:

> "I'm going to extend the deadline for the [Plaintiffs'] response to the
> [Defendants'] summary judgment motion to Friday, March the 13th, at which time the

reply needs to be filed by someone on behalf of the [P]laintiffs; and on that date I will enter an order allowing Mr. Kidwell to withdraw.

. . . .

"THE COURT: Mr. Luther, I'm going to let Mr. Kidwell out of this case. I have just said that. And [your new prospective counsel] hasn't decided if she's getting in the case. I hope for your benefit that she is but you need to, someone, yourself, or some lawyer on your behalf needs to get a reply to this summary judgment on file on or before March the 13th. I won't extend that deadline.

"MR. LUTHER: Yes, Your Honor.

"THE COURT: Period. And if I have to hear this summary judgment motion with you representing yourself, that's what I'll do."

With regard to Kidwell's request to reopen discovery, the district court opted to allow Plaintiffs' new counsel until April 6, 2015, to file a motion on this issue if additional discovery was needed.

On March 12, 2015, Luther filed a pro se response to Defendants' motions for summary judgment, along with a motion to compel Defendants to adequately respond to Plaintiffs' discovery requests, to reopen/extend discovery, and to allow Plaintiffs additional time to retain replacement counsel. Luther claimed that he had "spoken with more than twelve attorneys" since the February 9 hearing, and none of them were willing to represent Plaintiffs. Luther maintained, however, that he had recently spoken with two other attorneys who were "willing to review the file" and he hoped one of them would enter an appearance on Plaintiffs' behalf. Because he had "been diligent in [his] search for an attorney," Luther requested additional time to retain counsel.

Luther also alleged that Defendants' responses to interrogatories and requests for production had been so inadequate that it hindered his ability to prepare for depositions, and he requested an extension of the discovery deadline to allow Plaintiffs to "more fully investigate the records of the [ATF], the sale and or transfer of assets by [D]efendants,

7

the ability of [D]efendants to deliver on the original contract, [and] the participation of the individual defendants and their respective knowledge of the underlying facts, records and transactions at issue." Finally, although Luther asked that the "motions for summary judgment be denied until [he had] adequate information to fully respond," he stated: "In Answer to [D]efendants' Motion for Summary Judgment, I have attached a list of additional damages not originally submitted . . . ."

The district court held a hearing on Defendants' summary judgment motions on April 6, 2015. At the outset, Luther explained that although he still had not been able to "obtain proper counsel," the Law Office of Jerry K. Levy advised him to file a motion to add previously unnamed defendants, which he filed with the district court clerk earlier that morning. Luther informed the court that while Kidwell was supposed to help him, he had "tried to answer the summary judgment motion as best [he] could with documents and answers and things, but [it was] beyond [his] skill level." Luther also claimed that in conjunction with his written response, he provided a copy of a variety of exhibits to the district court clerk (which do not appear in the record on appeal) and this "rather significant stack of information [would] be pertinent to the summary judgment" motions.

When asked by the district court if he was prepared to proceed with arguments, Luther replied:

"I have no choice. Without counsel I don't know what I can do, Your Honor, unless the Court would grant me some sort of extension to that.

"I anticipated the counsel Kirk Levy would take this when I stood here in front of you a month ago, and they changed their mind because of the complexity and the size of the litigation.

"I'm actively seeking diligently other firms. It's not for lack of effort in calling, Your Honor. I work on it every day."

Although the district judge said that he did not doubt the veracity of Luther's claims regarding his efforts to obtain substitute counsel, he directed the parties to discuss the merits of the summary judgment motions.

After Defendants' counsel provided a detailed recitation of the facts and applicable law, Luther told the court that while he "respect[ed] the Court's finality and the res judicata in the other case," the Plaintiffs were not "looking for fraud" in that earlier litigation. Luther asserted the Plaintiffs "could not get a complete picture of what was going on" until the current lawsuit was filed because Defendants failed to appropriately produce documents in the Sedgwick County case. Luther explained, "These were things that were deliberately concealed. They were frauds that we simply weren't looking for, and I found myself in a complex piece of business litigation that I've had to survive not fully understanding why they couldn't just simply turn over the contract." Luther further claimed that the statute of repose allowed Plaintiffs to pursue damages for Defendants' fraud, and he asked the court to grant him the opportunity to "take [this case] to trial as best [he could] and take some depositions and/or during the trial try to get to the bottom of some of this information." Luther also advocated for an order compelling Defendants to comply with his discovery requests and/or extending the discovery deadline: "I think that we need to have all these persons involved and compel the discovery to determine who is culpable and to what extent."

The district court took the matter under advisement. On June 4, 2015, it issued an order granting Defendants' motions for summary judgment. In particular, the district court found that Luther's response to the summary judgment motions did not materially comply with Kansas Supreme Court Rule 141(b) (2015 Kan. Ct. R. Annot. 242). This rule requires the opposing party to state in separately numbered paragraphs that correspond to the numbered paragraphs of movant's memorandum, whether each of movant's factual contentions is uncontroverted or controverted with reference to the conflicting evidence on that material fact. Luther did not controvert a single material fact;

9

therefore, the district court deemed the statements of fact set forth in Defendants' memoranda as admitted by Plaintiffs. The district court further noted that although Luther was acting as a pro se litigant, it was obligated to hold Luther to the same standards as a party with legal counsel.

Importantly, the district court explained that it agreed with Defendants that the doctrine of res judicata barred the current lawsuit because the parties in this case and the Sedgwick County case were similar and "[P]laintiffs are attempting here to re-litigate claims already decided in the prior lawsuit or claims that could have been decided in the prior lawsuit." Moreover, the district court determined that the current litigation was nothing more than a fishing expedition:

> "Plaintiffs' problems with the current lawsuit started with a petition in which [P]laintiffs did not specify which defendant committed which tortious act. The problems continued with [P]laintiffs' initial responses to interrogatories wherein [P]laintiffs stated they were unable to answer how their claimed damage figure was arrived at, what persons might support their tort claims, or what actions the Jackson defendants took or failed to take which damaged their business. And finally, [P]laintiffs' problems with this lawsuit continue with their inadequate response to the summary judgment motions.
> "This lawsuit is one where [P]laintiffs took the approach of let's file it now and hope we can find proof of our claims later. Such proof has never materialized. And more importantly this case has already been tried once."

Plaintiffs filed this timely appeal.

INTRODUCTION

Plaintiffs contend the district court erred when it dismissed their case, "not on the merits, but summarily," because "[t]he time constraints and limitations imposed by the district court denied [them] the opportunity to conduct adequate discovery, review the

10

discovery produced in the course of litigation, and to present [the] best case with the aid of counsel." In particular, Plaintiffs challenge the district court's decision to deny their request for an order (1) compelling discovery, (2) extending the discovery deadline, (3) granting a continuance for additional time to retain substitute counsel, and (4) adding previously unnamed defendants.

JURISDICTION

Before we address the merits of Plaintiffs' arguments, we first consider Defendants' contention that we lack jurisdiction over this appeal. Defendants claim that Plaintiffs' pro se notice of appeal was insufficient to vest this court with appellate jurisdiction because despite the fact that Plaintiffs designate "'the court's decision to grant summary [judgment]'" as the basis for their appeal, the issues set forth in Plaintiffs' appellate brief involve the propriety of various procedural rulings, rather than the summary judgment order. Whether jurisdiction exists is a question of law over which we exercise unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009). According to K.S.A. 2015 Supp. 60-2103(b), "[t]he notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from*, and shall name the appellate court to which the appeal is taken." (Emphasis added.) Consequently, our Supreme Court has stated that it is a fundamental proposition of Kansas appellate procedure that "[a]n appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. [Citations omitted.]" *State v. Bogguess*, 293 Kan. 743, 756, 268 P.3d 481 (2012).

11

As Plaintiffs point out, however, "our Supreme Court's approach has been to use a broad or 'liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding' as required by the Kansas Code of Civil Procedure. [Citations omitted.]" *Vallejo v. BNSF Railway Company*, 46 Kan. App. 2d 498, 502, 263 P.3d 208 (2011), *rev. denied* 296 Kan. 1136 (2013); see *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 720, 869 P.2d 598 (1994). As a result, an appellant's use of broad, catchall language is typically sufficient to confer appellate jurisdiction over otherwise unspecified adverse rulings, while a notice of appeal that utilizes narrow language or designates a specific ruling by date or description is generally insufficient to confer jurisdiction over omitted rulings where the appellant could not have reasonably believed the judgment described in the notice of appeal included these rulings. See *Gates v. Goodyear*, 37 Kan. App. 2d 623, Syl. ¶¶ 2, 4, 626-29, 155 P.3d 1196, *rev. denied* 284 Kan. 945 (2007); see also *State v. Boyd*, 268 Kan. 600, 606-08, 999 P.2d 265 (2000) (appeal from "conviction" sufficient to preserve evidentiary and procedural claims); *Key v. Hein, Ebert & Weir, Chtd.*, 265 Kan. 124, 128-30, 960 P.2d 746 (1998) (Kansas Supreme Court liberally construed a notice of appeal to include issues related to an omitted ruling because the order identified by the pro se litigant included references to that ruling, the litigant utilized catchall language, and the appellees were not prejudiced.); *Hess*, 254 Kan. at 719-20 (notice of appeal specifying that the party was appealing from "portions of the jury verdict and the judgment entered by the court" was sufficient to include briefed issues not specifically identified in the notice of appeal).

We agree with Plaintiffs that it is appropriate to liberally construe their notice of appeal to include the procedural rulings that were entered at or about the date of the grant of summary judgment. This case was disposed of on summary judgment, and Plaintiffs' reference to that order was general enough to invoke appellate jurisdiction over the attendant procedural rulings. Moreover, Defendants do not contend they were surprised by the issues raised in Plaintiffs' appellants' brief or disadvantaged by language Plaintiffs

12

used in their notice of appeal. We discern no prejudice. Accordingly, we will review this appeal.

RES JUDICATA

In granting Defendants summary judgment, the district court found the Plaintiffs' claims were precluded by the doctrine of res judicata when he concluded: "[M]ore importantly this case has already been tried once." As a preliminary matter, while the basis for Plaintiffs' lawsuit is somewhat unclear, we infer that Plaintiffs claim Defendants committed fraud in connection with the sale of Wichita Arms and the transfer of the firearms license. As noted by the district court, this relates to the lawsuit that was previously litigated between the parties in Sedgwick County, hence the application of the res judicata doctrine.

Inexplicably, Plaintiffs ignore the district court's findings and legal conclusion with regard to the doctrine of res judicata. This legal conclusion was integral to the district court's grant of summary judgment, and Plaintiffs specifically raised the issue of the summary judgment order in their notice of appeal. Notably, in Plaintiffs' reply brief on appeal, counsel acknowledges: "It is true that Luther's notice of appeal stated [that] he was appealing 'the court's decision to grant summary [judgment]' . . . . Nonetheless, Luther's actual intent in filing his notice of appeal was to appeal *the entire disposal of his case* and the decisions leading up to it." (Emphasis added.) Despite Plaintiffs' intent, on appeal they present no argument or authority addressing "the entire disposal" or summary judgment ordered in the case.

Plaintiffs' failure to brief any error in the district court's summary judgment order based on res judicata is fatal to their appeal. Generally, issues not briefed by the appellant are deemed waived and abandoned, and an appellant's failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the

13

face of contrary authority is akin to failing to brief the issue. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013); *Superior Boiler Works*, *Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Of particular relevance to this case, however, is the principle that an appellant's failure to address all of the alternative grounds for the district court's judgment renders the issues on appeal academic and unassailable. See *Greenwood v. Blackjack Cattle Co.*, 204 Kan. 625, 627, 464 P.2d 281 (1970) (when district court's decision is based on alternative grounds, appellant's failure to challenge both grounds on appeal "renders unnecessary" a decision on the issue raised); *Parker v. Mid-Century Ins. Co.*, 25 Kan. App. 2d 329, 332, 962 P.2d 1114 (1998) (appellant did not challenge one of the district court's conclusions of law; therefore, the ruling was deemed conclusive). Accordingly, because of Plaintiffs' failure to address the district court's summary judgment order—which Plaintiffs specifically identified in their notice of appeal—we find the district court's conclusion of law that Plaintiffs' claims in this latest lawsuit are precluded by the doctrine of res judicata is conclusive.

PROCEDURAL RULINGS

Despite our holding that the district court properly granted summary judgment to Defendants, for the sake of completeness, we will also consider Plaintiffs' challenges to the district court's various procedural rulings made during the course of this litigation.

All of the procedural issues raised by Plaintiffs are analyzed under the same standard of review. The district court's rulings on Plaintiffs' motions to compel and/or extend discovery, to obtain a continuance for the purpose of obtaining substitute counsel, and to add previously unnamed defendants are subject to an abuse of discretion standard of review. See *Martin-Manatee Power Partners v. Peerless Mfg. Co.*, 44 Kan. App. 2d 75, 85, 233 P.3d 758 (2010), *rev. denied* 292 Kan. 965 (2011) ("Appellate courts do not

14

disturb a district court's order regarding discovery absent a showing of a clear abuse of discretion."); *Miller v. Glacier Development Co.*, 284 Kan. 476, 494, 161 P.3d 730 (2007), *cert. denied* 552 U.S. 1258 (2008) ("Because K.S.A. 60-240(b) gives a district court authority to 'continue an action at any stage of the proceedings upon such terms as may be just' if it finds good cause for the motion, our analysis turns on whether the district court abused its discretion in determining that Glacier's motion was not supported by 'good cause.'"); *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 417-18, 6 P.3d 871, *rev. denied* 268 Kan. 885 (1999) ("The general rule provides that a trial court has broad discretionary power to amend the pleadings. The exercise of that discretion will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party.").

Under all of these circumstances, a judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert denied* 134 S. Ct. 162 (2013). We find that no such abuse of discretion occurred in this case.

Plaintiffs raise two complaints regarding discovery. First, they contend the district court erred in denying Plaintiffs' motion to compel discovery responses. Second, Plaintiffs assert the district court erred in denying their request to extend the deadline for discovery.

Although Plaintiffs claim error in the district court's denial of their motion to compel, they point to only one offending interrogatory response pertaining to "clouds or encumbrances on any professional licenses" that "might have prevented the transaction." In response, Defendants objected to the vagueness of the interrogatory but subject to that objection provided information regarding the ATF license. The district court denied

15

Plaintiffs' motion to compel. On appeal, Plaintiffs assert "the district court's denial had the practical effect of depriving [Plaintiffs] of the entire purpose of discovery (and, by extension, the ability to prove his case)."

Plaintiffs do not explain what information regarding other clouds, encumbrances, or licenses they were seeking by posing this interrogatory. Plaintiffs also do not explain how this solitary, partial, interrogatory response derailed their ability to prove their case. On this record, Plaintiffs have failed to show an abuse of discretion by the district court.

Next, we consider the district court's denial of Plaintiffs' request to extend the discovery deadline. Much of Plaintiffs' argument for needing additional time is predicated on their own delay in obtaining discovery from Plaintiffs' own counsel in the original Sedgwick County litigation. In this regard, Plaintiffs do not explain why this dispute between Plaintiffs and their lawyers was not resolved prior to their filing of this related litigation. Moreover, Defendants played no role in this dispute between Plaintiffs and their prior attorneys which delayed some discovery. Most importantly, Plaintiffs allege that "an extension of discovery was . . . necessary to the development of [their] case" without providing any facts or analysis regarding the relevant evidence they expected to discover and its importance to their case.

We are unwilling to speculate regarding these matters. On this limited record we are unable to find any error by the district court in not granting Plaintiffs an extension of time to conduct additional discovery. See *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008) ("An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails.").

With regard to Plaintiffs' request for additional time to find substitute counsel, "'[i]n ruling on a motion for continuance . . . a court must consider all circumstances, particularly such matters as the applicant's good faith, his showing of diligence, and the

16

timetable of the lawsuit.' [Citation omitted.]" *In re J.A.H.*, 285 Kan. 375, 385, 172 P.3d 1 (2007).

While the district court accepted Plaintiffs' assertions about their attempts to acquire substitute counsel, we are not convinced these efforts showed that Plaintiffs exercised due diligence. As Defendants aptly point out, Plaintiffs had at least 3 months to obtain substitute counsel because Plaintiffs knew of Kidwell's illness prior to the filing of Kidwell's motion to withdraw on January 6, 2015. Yet, the district court did not hold the summary judgment hearing until April 6, 2015. Moreover, Plaintiffs never provided the district court with an estimate regarding how much longer they needed to accomplish the task of retaining new counsel. Finally, the fact that Plaintiffs still had not retained counsel by April 6, 2015, indicates that—for whatever reason—Plaintiffs were not going to be successful in the future in obtaining legal representation for this litigation. On the other hand, Defendants consistently maintained in the district court that continuing the proceeding would be unduly prejudicial to their defense due to Nolan Jackson's poor health. Under all of these circumstances, Plaintiffs have failed to prove the district court abused its discretion.

Finally, the district court opted not to consider Plaintiffs' request to add unnamed defendants at the summary judgment hearing due to the late filing of the motion. K.S.A. 2015 Supp. 60-206(c) provides that adverse parties shall be served with a written motion and notice of hearing at least 7 days prior to the hearing. Given that this motion was not provided to Defendants' counsel prior to the April 6, 2015, hearing, the district court did not error in declining to consider it on that date. Because Defendants had not received the motion and did not have an opportunity to respond, we cannot say that no reasonable person would have followed this course of action.

Moreover, on appeal, Plaintiffs do not discuss the identities of the proposed additional defendants or explain why they were not listed in the lawsuit initially.

17

Plaintiffs make the conclusory assertion that discovery documents demonstrated fraud which "*presumably* implicated additional defendants." (Emphasis added.) We are reluctant to presume the reason why Plaintiffs wanted to add defendants to their petition late in the litigation. It is the duty of Plaintiffs to prove error, not for an appellate court to presume it. Once again, the Plaintiffs have failed to make a sufficient showing that the district court abused its discretion.

Affirmed.